MARIE E. KUHLMAN, ADMINISTRATRIX, APPELLEE, V. WILLIAM F. SCHACHT, APPELLANT.

FILED FEBRUARY 28, 1936. No. 29431.

Tyler & Peterson and Wear, Boland & Nye, for appellant.

Thomas E. Dunbar, contra.

Heard before GOOD, DAY and PAINE, JJ., and RAPER and PROUDFIT, District Judges.

RAPER, District Judge.

The body of Henry B. Kuhlman was found on the paved highway about three and one-half miles south of Nebraska City on February 23, 1934, at about 7:30 p. m. His widow, Marie E. Kuhlman, was duly appointed administratrix of his estate and, as plaintiff, brought this action to recover damages from the defendant, William F. Schacht, a minor; she alleging that the negligence of the defendant caused the death of the said Henry B. Kuhlman. From a verdict and judgment for plaintiff, the defendant appeals.

On the night stated, the defendant and two young men companions drove a 1927 model Buick automobile southward from Nebraska City on highway 75, and at a place near where the body of the deceased was found struck some

object. The defendant and both companions admitted this, and they each testified that they did not see any person or object before the impact, or in the highway. The three were in the front seat, and the right lamp was broken and the right side of the hood on the top was dented as by some heavy object, the right side of the windshield shattered and radiator broken. No particular effort was made to stop, but one of the party said the speed was slackened some before the car reached the bottom of the hill. The road there inclined by about a three degree descent for about a half mile south of the place of the impact. The defendant drove his car about a mile south, and then turned at a cross-road, and drove back on highway 75 past the scene. His lights had gone out, and on his return he drove slowly without lights past the place and he and his companions said they looked for the object they had struck but were unable to see anything. They drove into Nebraska City, placed the automobile in a friend's yard, borrowed another car and drove past the scene of the accident. They saw an ambulance and a number of cars and saw an object covered by a white cloth, but did not stop. He drove about a mile south, then returned to Nebraska City by another route and went to his father's house until it was decided to notify the officers, which was done about three and a half hours afterwards.

The deceased, when last seen alive, was walking south on the highway. When found, the body was lying in a spillway on west edge of the highway and was badly mangled. There were smears of blood extending north on the pavement, 30 or 40 feet or more, and some glass fragments were picked up near 150 feet north of the body; one shoe and pocketbook found on the pavement some distance away. There is considerable variation in the evidence as to the condition of the lights on defendant's car. There is testimony that the defendant stated after the accident that his lights were dim and that they shone 35 or 40 feet ahead of the car, and there is some testimony that there was only one light on the car. The defendant testified that the lights

were in excellent condition, and there were two adjust-
ments, but both gave bright light, one being set closer to
the pavement, and his lights were on the low adjustment,
and were brighter when set that way, and with that ad-
justment he could see approximately one-half block, 140 to
150 feet; that the brightest beams of the lamps would be on
the pavement about 60 to 75 feet ahead of the car; that he
had his eyes on the highway and saw nothing on the high-
way before the crash, and was driving 40 miles an hour.
The battery and brakes were in good condition, he said.
His two companions testified they were driving from 40 to
45 miles an hour, that they saw no object or person before
the impact, and that the lights in condition that showed the
highway about half a block ahead, but one of them, Ross
Gerber, admitted that he might have said (the next day)
that he could see around 30 to 35 feet ahead where the
lights were brightest.

The deceased was a large man, six feet and three inches
in height, weighing 225 pounds. His body was dragged on
the pavement probably a hundred feet. There is nothing to
indicate that he was negligent, and the jury were war-
ranted in presuming that he was free from the charge of
contributory negligence. The evidence as a whole is suffi-
cient to establish that the death of Henry B. Kuhlman was
caused by the negligence of the defendant. From the con-
dition of the car and the mangled condition of the body and
the distance it was dragged along the pavement, it is evi-
dent that the car was moving at a high rate of speed.

The defendant urges nine alleged errors. The first three
relate to the failure of the court to appoint a guardian *ad
litem* for the defendant, who was a minor 20 years of age.
The proof shows that at the time of the accident and at time
of trial and judgment he was a minor. He was born Octo-
ber 29, 1913, and motion for new trial was overruled and
judgment entered on September 28, 1934. The petition
states that defendant was a minor and service of summons
was duly made on him as a minor and the court thereby
acquired jurisdiction. The defendant did not ask for the

appointment of a guardian, nor did his father or mother who were present at the trial, or his attorneys. This objection was first called to the court's attention on September 29, 1934, when motion for new trial was filed. Defendant was married at Auburn in May, 1934, and made affidavit that he was then past 21 years of age; but, notwithstanding that, the evidence is quite conclusive that he was born October 29, 1913. Section 20-309, Comp. St. 1929, provides: "The defense of an infant must be by a guardian for the suit, who may be appointed by the court in which the action is prosecuted, or by a judge thereof, or by a county judge." Section 20-310, Comp. St. 1929, provides: "The appointment may be made upon the application of the infant, if he be of the age of fourteen years, and apply within twenty days after the return of the summons. If he be under the age of fourteen or neglect so to apply, the appointment may be made upon the application of any friend of the infant, or on that of plaintiff in the action."

Appellant insists that section 20-309, Comp. St. 1929, is mandatory and the failure to appoint a guardian *ad litem* is reversible error, irrespective of all other features of the case. If it be granted that the court was in error, it does not necessarily follow that such error is fatal to the judgment. Our statute provides, and this court many times has held, that an error that does not prejudice or injure a party is not ground for reversal. Some courts have held that, where a minor has not been represented by his legally appointed guardian or by a guardian *ad litem* appointed by the court, it is sufficient reason for reversal. In many of such cases it appears that the rights of the minor have not been properly protected in the trial. In such cases, of course, there can be no question of the justness of granting a new trial. In the case at bar the defendant was within a few weeks of his majority; was married; was carrying on his own business; was the owner of the car involved, on which he carried liability insurance; and able, experienced and alert counsel conducted his case with skill, energy and earnestness, and, as shown by the record, at every stage of

the litigation have developed and placed before the trial court and this court every possible fact and circumstance in the defense. The trial judge was under the impression that the defendant, although named as a minor in the petition, had reached his majority before the trial. None can doubt that, if such guardian *ad litem* had been appointed, he would not have conducted or assisted in conducting the defense in any way different than the course that was pursued.

This court in *Parker v. Starr*, 21 Neb. 680, 33 N. W. 424, held that, the court having acquired jurisdiction by due process, the failure to appoint a guardian *ad litem* for a minor does not render void a judgment against him, and this has been followed in *Manfull v. Graham*, 55 Neb. 645, 76 N. W. 19. The statute gives to a minor over fourteen years of age the right to apply for the appointment of the guardian, and this is a privilege, if, indeed, not a duty, that the defendant did not avail himself. The trial court was not apprised of the minority of defendant until after verdict had been returned against him. Considering all the circumstances, we hold that the failure to appoint a guardian does not entitle defendant to a new trial.

The fourth assignment is that the court erred in giving instruction No. 1. This instruction begins as follows:

"Gentlemen of the jury, you are instructed as follows:

"No. 1. That Henry B. Kuhlman died intestate while a resident of Otoe county, Nebraska, on February 23, 1934, and the plaintiff, Marie E. Kuhlman, was the duly appointed and qualified and acting administratrix of his estate; that on the 23d day of February, 1934, at about 7:30 p. m."— and then proceeds to set forth the allegations of negligence as pleaded in plaintiff's petition and that said acts caused the death of the deceased. Appellant urges that this instruction is error in that the court peremptorily instructed the jury that all the acts of negligence alleged in the petition were true, and was equivalent to instructing the jury to return a verdict for plaintiff. After stating the acts of negligence, the instruction then reads: "Plaintiff further

alleges that said acts resulting in injuries and death of the deceased were due solely and as the proximate cause of the negligence of said defendant," and then proceeds to set out six specific acts of negligence complained of.

Instruction No. 2 states: "The burden of proof * * * is upon the plaintiff to establish by a preponderance of evidence the following matters: (1) That the defendant was guilty of one or more of the several acts charged as negligence in the petition; (2) that the acts so proved constituted negligence as defined in these instructions; (3) that the negligence so proved was the proximate cause of the collision and consequent death of Henry B. Kuhlman; (4) * * * If the plaintiff has so established each and all of the four foregoing propositions * * * your verdict should be for the plaintiff. * * * If plaintiff failed to so establish each and all of said propositions * * * your verdict should be for the defendant." An instruction in the usual form was given on comparative negligence of the parties, if any.

We assume the jury were at least men of ordinary intelligence, and that alert and able counsel had stated and argued to the jury on whom was the burden of proof, and what plaintiff had or had not proved; so, even before the instructions were read, the jury had acquired the knowledge, in a general way, as to what plaintiff alleged in her petition and what she was under obligation to prove. The second part of instruction No. 1, where it states that "plaintiff further alleges," and instruction No. 2, which positively and unequivocally states what plaintiff must prove before she could recover, render it plain that the jury could not have been misled into the belief that the judge was stating the facts as having been proved.

Assignment of error No. 5 relates to the giving of instruction No. 15, in which it is stated that in determining the amount of plaintiff's recovery, if any, the jury should consider the earnings, habits, health, profits of his labor, if any, of the deceased, what he would have earned, if he had lived, for the support of those entitled to the recovery, and probable expectation of his life. In other instructions

it was stated that the recovery, if any, would be for the exclusive benefit of the widow and next of kin and the services the next of kin could reasonably expect would have been rendered in their behalf, and that plaintiff must prove the amount of the pecuniary loss to the wife and three children because of the death of Henry B. Kuhlman. Taking all the instructions into consideration, there is no prejudicial error in giving the instruction.

In assignment No. 6 it is claimed the court erred in giving instruction No. 17, in which the jury are told that in determining the amount of plaintiff's recovery, if any, they should consider only the earning power of deceased for the probable time of his life. While this instruction might well have been framed in more definite language, its evident purpose was to advise the jury that the grief and suffering of the plaintiff and the children should not be made an element of damage. The instruction as given was not prejudicial error. Defendant offered an instruction, his No. 3, which states that plaintiff was only entitled to recover pecuniary loss and the jury were not permitted to consider any grief and suffering of the next of kin, nor should the jury be influenced by sympathy for the bereaved. The refusal of the court to give this instruction is No. 7 in defendant's assigned errors. The instructions referred to above and taken as a whole fairly cover the elements in defendant's requested instruction No. 3, and the court's refusal to give same is not prejudicial.

A witness, T. E. Holmberg, was called by plaintiff and was permitted to testify that, on a 1927 Buick car such as the one involved, the bright lights of the car would give a vision on the highway to a distance of 100 to 150 feet, and it might be up to 200 feet, and dim lights show as far as 50 to 60 feet; and, on being asked if the car moving at the rate of 45 miles an hour at that place could be stopped within the range of vision of the dim lights, answered that it would be pretty hard to stop the car in the distance of the dim lights. Appellant asserts as error No. 9 that the witness was shown to have no knowledge of the lights of the car in

question and therefore had no foundation for his testimony, and it was irrelevant. The question as to the condition of the lights was only relevant in so far as they lighted the highway and would render visible any object or person thereon. The three occupants of the car testified they did not see the person or object which the car struck before the impact, so it was not a question of stopping or attempting to stop a car after observing some person or object ahead. But even if such condition existed the answer was so indefinite that it did no injury to defendant. There is not a great deal of difference between Holmberg's estimate and defendant's testimony as to the distance dim lights and bright lights would illuminate the highway, and such difference is not material because of the defendant's testimony that he did not see the deceased. The testimony of the witness Holmberg worked no advantage to the plaintiff nor prejudice to the defendant.

The last assignment of error No. 9 is the exclusion of the testimony of the witness Allen Arrison, called by defendant, proffered by an offer to prove which clearly shows that it called for hearsay testimony and same was properly excluded.

Appellant by way of argument, without having it assigned as error, alleges that the assessment of damages is grossly excessive. This claim, not having been alleged as ground of error, should not be considered here. Comp. St. 1929, sec. 20-1919; Supreme Court Rule 13; *Gorton v. Goodman*, 107 Neb. 671, 187 N. W. 45.

The judgment of the district court is

AFFIRMED.